UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARMALITA HOWARD,<br><br>    Plaintiff<br><br>v.<br><br>DEPUTY GUZMAN,<br>WASHOE COUNTY JAIL,<br><br>    Defendants | Case No.: 3:20-cv-00003-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF Nos. 1, 1-1 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1).

**I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP].

The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the application should be granted.

## II. SCREENING

**A. Standard**

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names Deputy Guzman and the Washoe County Jail as defendants.

Plaintiff alleges that on August 21, 2018, she was in a Reno small claims courtroom where she was trying to recover her personal property from her former landlord who had evicted her when Reno Police Officer Ray Grott (who is not named a defendant and Plaintiff states she is pursuing him separately), arrested her for charges including harassment. She says that later a charge for attempted fourth degree arson, which is a felony, was added. Grott removed Plaintiff

from the courtroom. Grott took her purse and searched it and drove her to the Washoe County Jail. He told her that the small claims judge had given her 30 days to reclaim her property.

Plaintiff notified Grott she had money in her purse from which she could post bail, and at that point, Grott confiscated her purse and wallet with $1500 cash and her cell phone. This occurred before she was booked into the Washoe County Jail. She contends that Grott locked her purse and property away from her so she could not post bail and consequently, could not recover the property from her landlord before the 30-day deadline.

After Plaintiff was booked into the jail by the sheriff, she was told she had no property with her when she was booked, and so Plaintiff had no means to post her bail. She states that on August 23, 2018, after she was given her bail amount by the judge, she did not have her phone to get a phone number to call anyone for help. She begged every guard to retrieve her personal belongings from the "bulk" part of the jail so she could post bail, but they ignored her. By the seventh day in jail, she became desperate to get out so she could retrieve her property from her landlord, and so she took a chance and trusted one of her cellmates who said she would help Plaintiff get out and would put money on Plaintiff's "books" so she could post bail. Plaintiff contends that the cellmate tricked her, and stole Plaintiff's purse, her $1500 cash, and her car. As a result, Plaintiff lost all of that property, as well as the property at her former residence.

Plaintiff submitted grievances at the jail about not being able to post bail. Defendant Deputy Guzman responded to the grievances and told Plaintiff it was "too bad" her purse was locked away and it was not their responsibility to get her things from "bulk property."

After over 30 days in jail, another deputy went to the "bulk property" room, but by that point her purse, wallet, cash and phone had been stolen. Plaintiff claims she was forced to stay in

the jail for 45 days before the charges against her were dismissed. At that point she had nothing left.

## C. Analysis

### 1. Denial of Right to Post Bail

First, Plaintiff asserts a claim for denial of the right to post bail, which she claims caused her to be detained in the Washoe County Jail for 45 days.

Plaintiff alleges that Grott took her purse before she was booked into the Washoe County Jail and locked it into the "bulk property" room of the jail so that she would have no means to post bail. She further avers that the deputy sheriff's at the jail ignored her grievances for 45 days, causing her to be wrongfully imprisoned.

She states that was given her bail amount on August 23, 2018. She was unable to post bail and lost her assets. She begged every guard to get her property so she could post bail, to no avail. Guzman responded to her grievances and said it was "too bad" and there was "nothing that could be done" and Plaintiff would "just have to do her time."

While the Ninth Circuit has not specifically addressed this issue, other circuits have found that a detained individual has a liberty interest in exercising his or her bail option and being freed from detention once bail is set. *See Steele v. Cicchi*, 855 F.3d 494 (3d Cir. 2017); *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). Construing Plaintiff's allegations liberally, the court finds that Plaintiff states a colorable due process claim based on the averment that she was precluded from accessing her purse, cash and cell phone so that she could post bail.

Plaintiff obviously pursues this claim against Deputy Guzman, and because Plaintiff specifically alleges that she filed grievances on this issue that Guzman denied, Plaintiff should be

allowed to proceed against Deputy Guzman with this claim. Plaintiff does not name Officer Grott as a defendant, whom she claims took her property and put it in the "bulk property" section of the jail, and specifically states that she is pursuing Officer Grott separately; therefore, this claim should not proceed against Officer Grott.

Finally, Plaintiff sues the Washoe County Jail. Preliminarily, under Nevada law, "in the absence of statutory authorization, a department of the municipal government may not, in the department name, sue or be sued." *Wayment v. Holmes*, 112 Nev. 232, 237-38, 912 P.2d 816, 819 (Nev. 1996). Therefore, Washoe County Detention Facility (Washoe County's jail) is not a proper defendant. Washoe County may be a proper defendant; however, a municipality may not be sued under a respondeat superior theory. *Horton v. City of Santa Maria,* 915 F.3d 592, 603 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 693-95 (1978)). That is, the county may not be sued solely because it employed an individual who allegedly committed some wrongful act. Instead, municipalities can be held liable under section 1983 for constitutional injuries only under circumstances: (1) when the injury occurred due to an official policy; (2) when the injury occurred as a result of a pervasive policy or custom; (3) when the injury was due to a failure to train, supervisor or discipline; or (4) the injury occurred due to the decision or act by a final policymaker. *Id* at 602-03.

Plaintiff has not included any allegations that would give rise to liability by Washoe County for denying Plaintiff the right to post bail. The Washoe County Jail should be dismissed; however, Plaintiff should be given leave to amend to assert a claim against Washoe County within the parameters discussed above.

### 2. Retaliation

Next, Plaintiff states that Deputy Guzman threatened Plaintiff not to file any more grievances. Guzman eventually called Plaintiff to the guard's podium and told her not to file any more grievances about the matter, and if she did, Guzman would receive the grievance before her supervisor. Plaintiff alleges that she felt threatened and intimidated as if her safety was in danger. She calls this claim negligence and intimidation, but her State tort claims are addressed elsewhere, and this claim sounds more in retaliation than in negligence.

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

Plaintiff alleges that Guzman threatened Plaintiff with intercepting grievances and implies that she would deny or ignore them if Plaintiff continued to file grievances. Construing the pro se allegations liberally, Plaintiff should be allowed to proceed with a retaliation claim against Guzman.

**3. State Law Claims**

Plaintiff mentions negligence and "intentional torts", and references negligence, false imprisonment, conversion, intentional infliction of emotional distress, defamation, and property loss.

Preliminarily, Plaintiff may not bring a tort action against an employee of a political subdivision of the State (which would include Washoe County) for an action arising out of an act or omission within the scope of the person's public duties or employment unless Plaintiff names Washoe County as a party defendant under Nevada Revised Statute (NRS) 41.031. NRS 41.0337. Therefore, for those tort claims which the court recommends may proceed, or for which the court recommends leave to amend be given, Plaintiff must also name Washoe County as a defendant to proceed with those claims.

**a. Negligence**

Plaintiff cites "four elements of tort cases" including duty, breach, causation and injury; however, these are the elements of a claim for *negligence* and not every tort claim. The court will construe this aspect of her claim as such. She alleges that Guzman and the Washoe County Jail had a duty to give her access to her property to post bail but did not do so, causing Plaintiff to be detained in the jail for 45 days. As a result, Plaintiff claims that she not only stayed in jail unnecessarily, but lost her purse, wallet, $1500 cash, her cell phone and car, as well as the property at her former residence.

Plaintiff is correct that the elements of a negligence claim in Nevada are: duty, breach, causation and damages. *See DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732, 128 Nev. 406, 412 (Nev. 2012). Plaintiff should be allowed to proceed with her negligence claim

against Guzman. The Washoe County Jail should be dismissed; however, Plaintiff should be given leave to amend to add Washoe County as a defendant to proceed with this claim.

### b. False Imprisonment

Again, Plaintiff alleges she was given her bail amount on August 23, 2018, but was not allowed to access her purse and cell phone in order to post her bail, causing her to be detained at the jail for 45 days.

"False imprisonment is a restraint of one's liberty without any sufficient cause therefor." *Lerner Shops of Nev., Inc. v. Marin,* 423 P.2d 398, 400, 83 Nev. 75, 78 (1967). "Even if an arrest is made pursuant to valid legal process … imprisonment following the arrest may under some circumstances become unlawful." *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1144, 99 Nev. 548, 554 (1983).

Plaintiff should be allowed proceed with his State law false imprisonment claim against Deputy Guzman. The Washoe County Jail should be dismissed, but Plaintiff should be given leave to amend to Washoe County as a defendant to proceed with this claim.

### c. Conversion

Plaintiff asserts that due to the negligence of the deputy sheriffs, she lost her property by conversion to her former landlord. She claims the Washoe County Jail is also liable for this loss since it was a direct result of their negligence. She also claims they are liable for the loss of her purse, cash, phone and car, which were stolen by her cellmate, along with the loss of her bank account and storage, which she contends would not have occurred in the absence of their negligence.

Plaintiff is not asserting a claim against her landlord in this action for conversion of her personal property; instead, what she appears to be asserting is that she be permitted to recover

9

from Guzman and the Washoe County Jail damages for the loss of her property that was in her former residence.

The court will not construe this as a claim for conversion against these Defendants, but as a request for damages in connection with the claims proceeding here. As such, her claim for conversion should be dismissed with prejudice.

### d. Intentional Infliction of Emotional Distress

Plaintiff alleges that the Defendants deliberately ignored her and Guzman threatened her to not file any more grievances, telling Plaintiff, "Why didn't you just do your time?" She asserts that this "negligence and lack of care or concern and cruelty" was deliberate and intentional.

A plaintiff asserting an intentional infliction of emotional distress (IIED) claim in Nevada must demonstrate: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 92-93, 97 Nev. 124, 125 (1981) (citation omitted).

"[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26, 114 Nev. 1, 4 (1998) (citation and quotation marks omitted). "[P]ersons must necessarily be expected and required to be hardened … to occasional acts that are definitely inconsiderate and unkind." *Id*. (citation and quotation marks omitted).

Plaintiff's allegations do not rise to the level of extreme and outrageous conduct that is "outside all possible bounds of decency." In an abundance of caution, Plaintiff should be given leave to amend to attempt to assert a claim for IIED. If she chooses to amend to add such a claim, she must name Washoe County as a defendant to proceed with this claim.

### e. Defamation

Plaintiff's complaint mentions defamation, but there are no allegations that give rise to a defamation claim.

The elements of a defamation claim in Nevada are: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Clark County School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 385, 213 P.3d 496, 503 (Nev. 2009) (internal quotation marks omitted).

The defamation claim should be dismissed, but because it is unclear whether Plaintiff actually seeks to state a claim for defamation, the dismissal should be with leave to amend. Again, if she amends in this regard, she must name Washoe County as a defendant to proceed with this claim.

### f. Property Loss

Plaintiff lists as a separate claim her contention that she lost all of this property as a result of Defendants' actions. This is not a separate claim, but a request for certain damages, and will be construed by the court as such. To the extent Plaintiff includes a stand-alone claim for property loss, it should be dismissed with prejudice.

### 4. DNA Testing

Plaintiff asserts a claim against the Washoe County Jail for forcing her to submit to DNA testing before she was allowed to leave the jail. She states that an attempted arson felony charge was added after she was arrested for harassment, and was dismissed before she was released from the jail. The guard who oversaw her release said that because she came in with a felony, she had to submit to a DNA swab.

The Supreme Court has held that in the context of a valid arrest supported by probable cause to hold for a serious offense, "analyzing a cheek swab of the arrestee's DNA is … a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Maryland v. King*, 569 U.S. 435, 465-66 (2013). In *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) (en banc), the Ninth Circuit held that under *King*, California's requirement that DNA samples be collected from all adults arrested for felonies did not violate the Fourth Amendment.

Nevada law provides for the collection of a DNA sample with a cheek swab for all persons arrested for a felony with or without a warrant "[u]pon booking the person into a city or county jail or detention facility, and before the person is released from custody[.]" Nev. Rev. Stat. 176.09123(1)(b), 2(b).

In *Haskell v. Brown*, 317 F.Supp.3d 1095 (N.D. Cal. 2018) (*Haskell II)*, the plaintiffs argued that after *King*, "[e]ven if the Fourth Amendment allows the government to seize a DNA sample from everybody arrested on suspicion of a felony, once the government determines that it will not prosecute a person, or charges are dismissed, the government's interests no longer justify analyzing that sample to obtain a DNA profile." *Id*. at 1099. The district court said that *King* held that the government's interests attach when the individual is taken into custody. *Id*. (citing *King*, 133 S.Ct. at 1966, 1971, 1980).

*King* said that "at the time that interest attaches, '[w]hen officers make an arrest supported by probable cause to hold for a serous offense and they bring the suspect to the station to be detained in custody'" law enforcement may "'tak[e] and analyz[e] a cheek swab of the arrestee's DNA.'" *Id*. (quoting *King*, 133 S.Ct. at 1980). *King* analogized "taking and analyzing" the cheek swab to "fingerprinting and photographing" where it deemed were both "legitimate police booking procedure[s]." *Id*. In *Haskell II,* the district court found that "even as to

12

individuals arrested but not subsequently charged, the government's interest at booking is weighty." *Id*. at 1103. Specifically, "[t]he government has a significant interest in identification of arrestees" "both who they are and what they have done" and that interest "is present even if the arrestee is not ultimately charged with the felony for which he has been arrested. *Id.* at 1104 (citations omitted).

In addition, the government has an interest in "accurately assessing 'the danger [an arrestee] poses to the public,' which will 'inform a court's determination whether the individual should be released on bail.'" *Id*. at 1105 (quoting *King*, 133 S.Ct. at 1973). "While bail determinations do not apply to an individual never charged, even while the individual is out of custody on bail or on release, "DNA testing results may identify the arrestee as a violent criminal who should not be released into the community to reoffend." *Id*. (citation and quotation marks omitted). Finally, the government "has an interest in exoneration: 'the identification of an arrestee as the perpetrator of some heinous crime may have the salutary effect of freeing a person wrongfully imprisoned for the same offense.'" *Id*. (quoting *King,* 133 S.Ct. at 1974.) This interest "may apply to individuals arrested but not charged." *Id*. (citation and quotation marks omitted).

*Haskell II* reiterated *King's* conclusion that "the intrusion of a cheek swab to obtain a DNA sample is a minimal one." *Id*. at 1106 (quoting *King*, 133 S.Ct. at 1977). "The expectations of privacy of an individual taken into police custody 'necessarily [are] of diminished scope.'" *King,* 133 S.Ct. at 1978 (quoting *Bell v. Wolfish*, 441 U.S. 520, 557 (1979)).

*Haskell II* also pointed out that when the Supreme Court decided *King* the Court was aware, through amicus briefing from the ACLU, that "[m]any jurisdictions take DNA from persons never charged with a crime." *Id.* at 1107 (citing *King*, 133 S.Ct. at 1968; Brief of Amici

13

Curie American Civil Liberties Union et al. Supporting Respondent at *54, *Maryland v. King*, 133 S.Ct. 1958 (2013) (No. 12-207), 2013 U.S. S.Ct. Briefs, LEXIS 751).

Neither the Nevada Supreme Court nor the Ninth Circuit appears to have specifically addressed whether it violates the Fourth Amendment to take a DNA swab from a person after they are arrested/charged for a felony, but after the felony charge has been dismissed. Nevada's statute itself appears to allow the taking of the sample when a person is arrested for a felony "upon booking" and "before the person is released from custody." The court also finds the reasoning of *Haskell II* to be persuasive, but because the law in this area is not settled, Plaintiff may possibly state a claim.

Plaintiff should be given leave to amend to clarify the contours of her Fourth Amendment DNA claim (i.e., how the arrest occurred, when the felony charge was added, and when and under what circumstances the DNA sample was taken), and importantly, to assert the claim against a proper defendant. As it stands, she does not identify (or seem to pursue) the person who took the DNA swab. She asserts the claim against the Washoe County Jail, which is not a proper defendant. Washoe County might be a proper defendant, but she does not include allegations that provide a basis for holding Washoe County liable under *Monell*.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order as follows:

(1) Plaintiff's IFP application (ECF No. 1) should be **GRANTED**.

(2) The Clerk should be directed to **FILE** the Complaint (ECF No. 1-1).

(3) Plaintiff should be allowed to **PROCEED** with: the due process claim regarding her ability to post bail against Guzman; the retaliation claim against Guzman; the State law

negligence and false imprisonment tort claims against Guzman (if she amends to add Washoe County as a defendant).

(4) The State law tort claims of IIED and defamation should be **DISMISSED WITH LEAVE TO AMEND**.

(5) The State law claims of conversion and property loss should be **DISMISSED WITH PREJUDICE**.

(6) The Fourth Amendment DNA testing claim should be **DISMISSED WITH LEAVE TO AMEND**.

(7) The Washoe County Jail should be **DISMISSED**, but Plaintiff should be given **LEAVE TO AMEND** to attempt to assert claims for due process related to posting bail, the Fourth Amendment DNA testing claim, and the State law tort claims of negligence, false imprisonment, IIED and defamation against Washoe County, consistent with the law cited in this Report and Recommendation.

(8) Plaintiff should be given **30 DAYS** from the date of any order adopting and accepting this Report and Recommendation to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff should be advised to clearly title the amended pleading as "AMENDED COMPLAINT."

Plaintiff should be further advised that if she fails to file an amended complaint within the 30 days, the action will proceed only on the due process, and retaliation claims against Guzman, as discussed in this Report and Recommendation.

Dated: April 6, 2021

_____
William G. Cobb
United States Magistrate Judge